# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

RICHARD TERRY FRIEND,

        Petitioner,                      Case Number: 2:06-CV-10704

v.                                      HON. LAWRENCE P. ZATKOFF

KENNETH T. MCKEE,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Richard Terry Friend, a state inmate currently incarcerated at the Bellamy Creek Correctional Facility in Ionia, Michigan, has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges his convictions for two counts of first-degree criminal sexual conduct, and two counts of second-degree criminal sexual conduct, for which he is serving two sentences of twelve to thirty-five years, and two sentences of ten to fifteen years, all to be served concurrently. For the reasons set forth below, the Court denies the petition.

### I. Facts

Petitioner's convictions arises from the sexual assault of Christopher Leonard, who was 11-years-old at the time of the trial. Christopher's mother, Carmella Hamilton, began dating Petitioner, who resided in Port Huron, Michigan, while she was living in Pennsylvania. Hamilton testified that she visited Petitioner in Port Huron several times between August 1999 and January 2000. She brought Christopher with her for two or three visits. In January 2000, she moved into Petitioner's home in Port Huron. Christopher moved with her, but returned home in the summers of 2000 and 2001 to live with his grandmother in Pennsylvania. Hamilton first learned that Christopher claimed

to have been assaulted by Petitioner in June 2002.

Christopher Leonard testified that when he and his mother were visiting Petitioner in Port Huron, Petitioner began touching him sexually. Petitioner touched Christopher's penis and forced Christopher to reciprocate. He also performed fellatio on Christopher and forced Christopher to do the same to him. Christopher estimated the touching took place approximately twenty times, and the fellatio approximately thirty. Christopher testified that Petitioner also attempted to sodomize him. Christopher observed Petitioner's friend, Joseph Palencar cross-dress while at Petitioner's home. Petitioner also forced Christopher to put on makeup and women's clothes. Christopher further testified that Petitioner videotaped him taking a bath and engaging in various sexual acts.

On cross-examination, Christopher admitted to some resentment of Petitioner for Petitioner's discipline strategies. Petitioner punished Christopher for infractions by yelling at him and forcing him to stand in a corner for up to three-and-a-half hours.

Joseph Palencar testified that he had been friends with Petitioner for thirty years. He admitted to going to Petitioner's house to cross-dress from time to time. Palencar never observed Petitioner forcing Christopher to dress in women's clothes.

Holly Hamilton testified that her grandson, Christopher, spent holidays with her. Christopher told her what Petitioner had done to him in June 2002.

Petitioner testified in his own defense. He testified that Christopher had not wanted to move to Michigan with his mother and frequently rebelled because of his resentment. Petitioner denied assaulting Christopher, denied videotaping Christopher, or forcing him to dress in women's clothing.

## II.  Procedural History

Following a jury trial in St. Clair County Circuit Court, Petitioner was convicted of two

2

counts of first-degree criminal sexual conduct and two counts of second-degree criminal sexual conduct. On January 21, 2003, he was sentenced to twelve to thirty-five years imprisonment for each of the first-degree convictions and ten to fifteen years for each of the second-degree convictions, all to be served concurrently.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

> I. The trial court improperly interfered with Defendant's constitutional right to present a defense and violated the evidentiary rules on character evidence by obstructing his ability to prove that molesting children was not in his character.
>
> II. Defendant was denied his due process right to a fair trial by the prosecutor's misconduct where she argued that his making of a videotape of a sexual act before indicated that he again did so here (as claimed by the complainant). Trial counsel was ineffective for failing to object.
>
> > A. Arguing to the jury that Defendant was more likely to have made the videotape here because he had made a sexually explicit videotape in the past constitutes reversible misconduct on the part of the prosecutor.
> >
> > B. Trial counsel was ineffective for failing to object to the prosecutor's improper argument.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Friend*, No. 246443 (Mich. Ct. App. Apr. 20, 2004). Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same issues that were raised in the Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Friend*, No. 126271 (Mich. Oct. 25, 2004).

Petitioner then filed the pending habeas corpus petition, challenging his convictions on the following grounds:

> I. The trial court improperly interfered with Petitioner's constitutional Sixth and Fourteenth Amendment due process right to present a defense and violated the

3

evidentiary rules on character evidence by obstructing his ability to prove that molesting children was not in his character.

II. Petitioner was denied his due process right to a fair trial by the prosecutor's misconduct where she argued that his having made a videotape of a sexual act previously indicated that he again did so here (as claimed by the alleged victim). Petitioner's Sixth and Fourteenth Amendment rights to due process were violated by not having been provided with effective assistance of counsel.

A. Petitioner was denied his due process right to a fair trial by the prosecutor where she argued to the jury that Petitioner was more likely to have made the videotape here because he had made a sexually explicit videotape in the past constitutes reversible misconduct on the part of the prosecutor.

B. Petitioner's Sixth and Fourteenth Amendment rights to due process were violated by not having been provided with effective assistance of counsel. Trial counsel was ineffective for failing to object to the prosecutor's improper argument(s).

### III. Analysis

### A. Standard of Review

Section 2254(d) of Title 28 of the United States Code imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable

application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429 (6th Cir. 1998).

Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)[1]; *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases ....
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect

---

[1] 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

5

application of federal law .... Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11.

## B. Right to Present a Defense

In his first habeas claim, Petitioner argues that the trial court violated his right to present a defense when the court limited his ability to show that molesting children was not in his character. Petitioner maintains that the trial court placed limitations on his ability to elicit such testimony but placed no similar restrictions on the prosecutor's ability to elicit character testimony where such testimony was incriminating. Specifically, Petitioner argues that the prosecutor was permitted to question prosecution witnesses about Petitioner's character in light of a sexually explicit videotape made by Petitioner. While the prosecution was not permitted to introduce the videotape, certain portions of the videotape's transcript were admitted.

The right of a defendant to present a defense has long been recognized as "a fundamental element of due process of law." *Washington v. State*, 388 U.S. 14, 19 (1967). It is one of the "minimum essentials of a fair trial." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). The Supreme Court has described the "most basic ingredients of due process of law" as follows:

> A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense -- a right to his day in court -- are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel.

*Washington v. Texas*, 388 U.S. 14, 18 (1967) (quoting *In re Oliver*, 333 U.S. 257 (1948)).

Further, the Supreme Court described the right to present a defense as follows:

The right to offer testimony of witnesses, and to compel their attendance, if

6

> necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Id.*

This Court recognizes that, while the right to present a defense is a fundamental tenet of due process, "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 118 S. Ct. 1261, 1264 (1998). Indeed, "[a] defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id.* (internal quotations omitted). However, the exclusion of evidence is unconstitutional where it "infringe[s] upon a weighty interest of the accused." *Id.* (citing *Rock v. Arkansas*, 483 U.S. 44, 58 (1987)); *see also Chambers v. Mississippi*, 410 U.S. 283, 302 (1973); *Washington v. Texas*, 388 U.S. 14, 22-23 (1967).

In determining whether the exclusion of evidence infringes upon a weighty interest of the accused, the Court's role is not to determine whether the excluded evidence would have caused the jury to reach a different result. *Davis v. Alaska*, 415 U.S. 300, 317 (1973). Instead, the question is whether the defendant was afforded "'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). The prosecutor's case must "encounter and 'survive the crucible of meaningful adversarial testing.'" *Id.* at 690-691(quoting *United States v. Cronic*, 466 U.S. 648, 656 (1984)).

The Michigan Court of Appeals held that the limitations placed upon Petitioner's ability to present testimony regarding his character were reasonable and in conformity with Michigan law. The Michigan Court of Appeals reasoned:

[D]efendant contends that the trial court erred in not allowing him to question certain witnesses regarding their opinions as to defendant's good moral character as it related to children, and the court erred in ruling that defendant had opened the door regarding character evidence which allowed the prosecution to question the witnesses regarding their character opinions in light of a videotape made by defendant. MRE 404(a)(1) provides that evidence of a pertinent character trait offered by the accused or by the prosecution to rebut the same is admissible to show that the accused acted in conformity with his character.

Defendant was not permitted on cross-examination to ask one witness, "Is [defendant] a child molester?"; "Does he like to date women?"; and "Has he ever dated little kids?" The court disagreed with defendant that the charges against him equaled an accusation that defendant was a homosexual pedophile. The court did permit questions, however, that elicited from the witness that defendant had babysat his children in years past and that the witness would not have allowed this to occur if he had any doubts as to defendant's integrity. Defendant's claim that he was improperly restricted from asking this witness questions regarding his opinion of defendant's character is without merit. Such questions are properly posed during a defendant's case-in-chief, not on cross-examination. *People v Thomas*, 126 Mich App 611, 622; 337 NW2d 598 (1983). This is so because a prosecutor cannot introduce evidence to rebut the defendant's character until the defendant has injected the issue into the trial. *Id.* The trial court did not abuse its discretion in ruling that the above-quoted questions were impermissible.

We also find that the trial court did not abuse its discretion in permitting the prosecution to use the transcript of the videotape to rebut defendant's contention that he was of good moral character. The defense elicited on direct examination from two of its witnesses that (1) defendant was of good sexual moral character; (2) he liked and dated women; and (3) he never dated children. On cross-examination, the prosecutor read excerpts from the videotape and asked the witnesses if, in light of the content of the videotape, did their opinion of defendant's sexual morality change. Both stated that it did not.

Our Supreme Court has held that once a defendant has placed his character in issue, it is proper under MRE 404(a)(1) for the prosecution to introduce evidence that the defendant's character is not as impeccable as is claimed. *People v. Vasher*, 449 Mich 494, 503; 537 NW2d 168 (1995). On cross-examination, the prosecutor attempted to rebut defendant's assertion of good character by questioning the witnesses as to whether knowledge that defendant had made a sexually explicit videotape or the contents of the videotape would change their opinion of defendant's character. This was proper rebuttal.

Defendant claims that this was not proper rebuttal because he only wanted to present evidence of defendant's character as it related to children and the prosecution was

> introducing evidence of moral character as it related to adult women. Defendant was not permitted to ask any questions regarding defendant's sexual morality towards children specifically, but was limited to testimony regarding his sexual morality in general. While we find that it may have been error for the trial court to so restrict the testimony, we find that any error was harmless because despite the court's rulings the defense character witnesses did in fact testify that defendant had not acted inappropriately towards children and did not express any sexual interest in them. In regards to the prosecution's rebuttal evidence, the jury was aware that it was allegedly made for a former adult girlfriend and the prosecution was limited to asking the witnesses if their opinion changed in light of the contents of the tape. Therefore, we do not find that it was an abuse of discretion for the trial court to permit this rebuttal evidence.

*Friend,* slip op. at 1-3.

Having reviewed the transcript, the Court finds that Petitioner had many opportunities to present evidence regarding his good moral character. At least three defense witnesses testified that Petitioner had never exhibited any sexual interest in children. While he was not permitted to ask Joseph Palencar whether Palencar thought Petitioner was a child molester, Petitioner was permitted to question Palencar regarding Petitioner's general moral character. In addition, Palencar testified that Petitioner babysat for his children and he had no concerns about his children's safety while in Petitioner's care. In addition, the trial court permitted the prosecution to question witnesses regarding Petitioner's character only after Petitioner introduced character evidence at trial.

The Court finds that the trial court placed reasonable restrictions on the admission of testimony regarding Petitioner's character. The restrictions were sufficiently lenient to allow evidence of Petitioner's character to be introduced. Petitioner was not denied his right to present a meaningful defense by the court's imposition of these reasonable restrictions. Therefore, the Court denies relief on this claim.

### C. Alleged Prosecutorial Misconduct

Petitioner argues that the prosecutor committed misconduct when, in her closing statement,

she argued that the victim's testimony that Petitioner taped one of their sexual encounters was corroborated by the fact that, when executing a search warrant, the police found a sexually explicit tape of Petitioner masturbating.

Respondent argues that this claim is procedurally defaulted because defense counsel failed to make a contemporaneous objection. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of this claim.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." *Angel v. Overberg*, 682 F.2d 605 (6th Cir. 1982). The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)). The Court must first consider whether the prosecutor's conduct and remarks were improper, and, if so, consider the following four factors to determine " whether the impropriety was flagrant" and thus warrants habeas relief:

> (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or

extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong.

*Girts v. Yanai*, __ F.3d __, 2007 WL 2481018, *12-13 (6th Cir. Sept. 5, 2007) (internal quotations omitted).

The Michigan Court of Appeals held that, while the prosecutor's comment was arguably improper, it was harmless error. The state court reasoned that the prosecutor's improper remark was limited to a brief comment in her closing statement and Petitioner was not charged with any offense related to the making of the videotape. *Friend,* slip op. at 3. In addition, the trial court gave a limiting instruction as to the proper use of the videotape. *Id.* Thus, the state court held that any error was harmless.

The Court finds that the state court's holding was not contrary to or an unreasonable application of Supreme Court precedent. The prosecutor's remark was isolated, did not appear to be deliberately constructed, and, given the limiting instruction, would not tend to mislead the jury. Accordingly, habeas relief is denied on this claim.

### D. Alleged Ineffective Assistance of Counsel

Finally, Petitioner argues that his attorney was ineffective in failing to object to the prosecutor's alleged misconduct.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. *Id.* To satisfy the prejudice prong, a petitioner must

show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court's review of counsel's performance must be "highly deferential." *Id.* at 689.

As discussed above, Petitioner was not prejudiced by the prosecutor's statement in closing argument. Thus, he cannot satisfy the *Strickland* prejudice prong and relief is denied.

## IV. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: November 6, 2007

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on November 6, 2007.

s/Marie E. Verlinde
Case Manager
(810) 984-3290